Good morning, Illinois Public Court, 1st District Court is now in session, the 4th Division. The Honorable Justice Robert E. Gordon presiding, case number 1-7-1923, People v. Xavier Edgecombe. With the lawyers who are going to argue the case before the court, please introduce yourself to the court. Yes, Your Honor. May it please the court, my name is Robert Markfield, I represent Xavier Edgecombe. May I quickly add, although I can hear the audio fine, I don't have video on this Zoom for some reason. Okay. We see you, counsel. Okay. Well. For the state. Darren, do we have anyone from the state? Yeah. Mrs. Spielberg, are you here? I see Alan Spielberg, he's here, but I don't know what's going on with his computer. Yeah, it looks like his screen might be frozen. Yeah. It says his network bandwidth is low, just like mine. I would just say to the parties, if you can hear me, if I'm thrown off the screen, it's because of my network bandwidth, and I'll have to listen to the aural if I am thrown off. Yes, Your Honor. Mr. Markfield, can you see and hear now? May I help, Mrs. Spielberg? Yeah, I'm waiting for, he signed off, I'm waiting to see if he signs back on. I can hear perfectly, but I cannot see anybody, just boxes with names, that's all. Okay. As Judge Lampkin mentioned, we can see you. Yeah, we can see and hear you. I'm waiting to see if Mr., I just sent Mr. Spielberg a new link. We'll have him use the telephone then somehow. Okay, I'm going to mute this and I'm going to call him on the phone. I'm very sorry about that, Your Honors. Can you hear me and see me now? Yeah, we can hear you and see you, fine. Thank you, sir. We're going to start, let me ask the appellant, are you going to reserve some time for rebuttal? Yes, Your Honor, I'll reserve five minutes. Okay, well let's proceed. May it please the Court and Counsel, my name is Robert Markfield and I represent Xavier Edgecum in this matter. The central question of this case, upon which defends Xavier Edgecum's constitutional claims of violation of right of presence and ineffective assistance of direct appeal counsel is this. Did the Court err prejudicially in refusing to provide a substantive response to a jury note expressing confusion and requesting clarification as to the meaning of Edgecum's best defense to first degree murder, namely guilt as to the lesser mitigated offense of second degree murder. The language from the instruction about which the jury expressed confusion included the phrase unreasonable belief in the need for a deadly force. In deciding Edgecum's first stage post-court- Let me ask you a question before you get into that. Yes, Your Honor. Isn't the bottom issue here the defendant has to make a substantial showing? Yes, Your Honor. And isn't it true that the evidence at trial showed overwhelmingly that this was simply a drive-by shooting? Well, of course, the second degree murder inquiry is a subjective standard. It is what the defendant believed at the time of the shooting. And I believe that there was significant evidence that what he believed may be unreasonable, of course, certainly unreasonably, was that there was a person who was in the crowd named Marcello Hatton who was aiming a gun at him. The jury was entitled to be properly instructed as to second degree murder and to make that judgment themselves, whether he actually held that unreasonable belief. In deciding Edgecum's first stage post-conviction petition, this court has answered the question in the affirmative, noting that in accordance with the Supreme Court's decision in People v. Childs, the trial court has a duty to respond substantively to a jury note that requests clarification on a disputed point of law. The clarification that was called for in this case was to quite simply follow the IPI, the directive of the IPI, and present the instructions on reasonable and unreasonable belief in the need for deadly force side-by-side to the jury. The trial court not only failed to clarify the instruction in this manner in response to the jury request for clarification, but also failed to combine these instructions when initially instructing the jury. The court's failure left open a very significant probability that the jury simply did not understand and therefore adequately assess whether Edgecum held an unreasonable belief in the need for deadly force. Now granted, this is a second stage post-conviction appeal with elevated second stage pleading standards. However, I believe that the findings and logic articulated by this court in deciding the first stage post-conviction appeal are apposite to the second stage post-conviction case and yield the correct resolution. The nature of the jury's request for clarification explains why the court's faulty response implicated Edgecum's constitutional right to presence. To show prejudicial denial of right of presence, there must be a violation of an underlying substantial right, such as here, the right to a fair jury, also in childs. Thus, there's nowhere to be remedied where the jury's question was administrative in nature or pertain to a hung jury. That's people v. McLaren. Or where the instruction about which clarification is requested is irreducibly clear and simple. That's people v. McDonald. Or where the jury's response or where the jury's question calls for a response that would necessarily tilt the jury in one way or another. That's people v. Boston. Those cases are all distinguishable. Here, as noted, the trial court's failure to provide the requested clarification in the manner directed by the IPI created a significant probability that the jury failed to correctly understand and apply the definition of second-degree murder. Notably- Let me ask you this. Let's assume that what you say is true and that the court made this error. Wouldn't that be just a harmless error on a drive-by shooting? I mean, how would that be a substantial showing of anything? Well, it's a substantial showing that direct appeal counsel should have raised this issue. And the bar for success, I think, is pretty low. First of all, the issue was preserved, as this court specifically found. It was raised in the post-trial motion by post-trial. The right of presence was raised in the post-trial motion by post-trial counsel. So had direct appeal counsel raised it, the burden would have been on the state to show harmlessness. And as I said in my first answer, I think that there's significant evidence in the record that shows maybe not reasonably, certainly not reasonably, but that Xavier Edgecombe held this belief that his life was in danger. And the jury, properly instructed, should have been the one to make that assessment. Well, isn't it true that he seeked out the victim? He seeked out the victim, came by in a drive-by shooting, and killed him? He wanted to confront them. That's clear. There was this gang, a group of people that hung out on a street corner. There was a confrontation the day before. They had beat him up. There was a gun fired, not by my client, by somebody in the crowd that beat him up. The next day, he borrowed a gun from his cousin, but said specifically to his cousin when borrowing the gun, and also to his girlfriend, that he did not intend to shoot anybody, that his goal was to get into a fistfight or a discussion. He did ask for a gun, but it's not clear that he had formed the intent to kill anybody or shoot anybody. And then, when he arrived at the scene, his trial testimony was that there was somebody in the crowd that he recognized who had participated in the beating the day before with a gun. It was what he said, but that was somewhat corroborated by the state's witness, Georgina Harris, his girlfriend, but a state's witness. And she said that right after the shooting, she questioned him, why did you do this? And he said, somebody was in the crowd shooting at him. So he perhaps held this irrational belief that his life was in danger, and that deadly force was about to be used against him. The jury should have been the one to make that determination. Notably, in paragraph 94 of your Honor's decision on the first post-conviction appeal, this court described the trial court's handling of this case as involving, quote, a series of errors, unquote, errors, not arguable errors. This definitive language articulated by this court suggests that the defendant's claim did not merely clear the first stage arguability threshold. It also cleared the second stage substantial deprivation of a constitutional right threshold. The errors identified by this court were fourfold, all impactful and cumulative. The trial court, according to this court, failed to combine the unreasonable and reasonable belief instructions at the initial instruction phase, failed to provide the unreasonable and reasonable belief instructions side by side in response to the jury request for clarification, failed to ensure Edgecombe's personal presence during discussions with respective counsel on how to respond to the jury note, and failed to provide the needed clarification at a point that this court identified as the pivotal moment of deliberations. The issue of violation of right of presence was preserved in the defendant's post-trial motion, as I've mentioned, and as this court has specifically found in the first post-conviction appeal. Therefore, had it been raised on direct appeal, the issue would have been reviewed under the harmless error standard, which places the burden of persuasion on the state to disprove prejudice rather than the plain error standard, which places the burden of persuasion on the defendant. Now, as to prejudice, we've talked about this a bit, but I just want to make a general point that it is not a high burden to show unreasonable belief by a preponderance. Just from common human experience, people easily form and act upon unreasonable beliefs all the time. And this is especially so when one's personal safety is perceived to be under threat, and split-second decisions and actions are called for and made, sometimes with terrible, horrifying consequences. As I have said, there's strong evidence in the record from which the jury could have found by a preponderance that Edgecombe held an unreasonable belief in the need for deadly force when he fired the gun. As I said, he saw a man named Marcello Hatton pointing a gun with him, causing him to fear for his life. He knew Marcello Hatton. He identified Hatton as someone who had participated in beating him up one day before in an incident in which a gun was fired. His testimony as to his belief in imminent danger was corroborated by his girlfriend, state's witness Georgina Harris, who was in the car with him when Edgecombe fired his gun. Harris testified right after the shooting, Edgecombe told her that he fired his gun because someone was firing a gun at him. So I think that had the Direct Appeal Council raised this preserved issue, there's a significant probability that she would have succeeded. You're already basically close to past your time. I'm sorry, Your Honor. My final paragraph. In sum, Edgecombe has established all well-pleaded allegations taken as true that there was a prejudicial violation of his right of presence and ineffective assistance of Direct Appeal Council for failing to raise this preserved issue. Edgecombe's post-conviction petition should therefore proceed to the evidentiary hearing stage of post-conviction proceedings. Thank you, Your Honor. Thank you. Let's hear from the state. Oh, wait, wait, wait, wait. Excuse me. Does any of the panel members have any questions? Justice Lamkin? Yeah. Justice Reyes? No, none at this time. Okay. Then let's hear from the state. Thank you, Your Honor. Again, Assistant State's Attorney Alan Spellberg representing the people of the state of Illinois. The question before this court is whether or not the trial court properly dismissed the defendant's post-conviction petition at the second stage based upon a finding that he did not make a substantial showing of a claim of ineffective assistance of Appellate Council. And that's the question that really needs to be answered here, whether or not that decision was incorrect. Because what needs to be addressed is whether or not the Appellate Attorney had enough information and exercised her discretion to decide which issues to proceed on. And counsel is entirely correct that this court, in the last appeal, found that there was enough in the record, enough in the petition, to support a first stage finding. To support the determination that the claim of ineffective assistance of Appellate Council was arguable. But what's important is that after the matter was returned to the circuit court for second stage proceedings, no additional evidence was offered. No additional facts were offered. No additional information regarding what the Appellate Attorney did or did not do, or more importantly, why she did or did not do that, was ever offered. Instead, what was presented to the circuit court at the motion to dismiss stage, and what is presented to this court at this stage, is exactly the same information that was presented in the last appeal. And that's why the fact that this is a second stage review is so important. Because as this court recognized in its own decision in the earlier appeal, the standards for first stage review are significantly lower than the standards for second stage review. All the defendant had to establish in the first instance was an arguable claim of ineffective assistance of Appellate Council. But what he has to establish here now is make a substantial showing. And the reason for that substantial showing is because the determination is that if the defendant offers enough facts and legal theories and arguments to support the claim, then he is entitled to an evidentiary hearing where he can prove those facts. But the defendant hasn't offered any additional facts at this point. All we have are the same points that were found in the record on the direct appeal that were now raised at this point. And that's why the difference in standards of review is so key. Even though it is still a de novo review, obviously, but this court has to look to see, is there a substantial showing? And he just can't make that. Because, one, the presumption that the attorney made a legitimate strategic choice as to which issues to raise, which has to be applied. Two, there is no demonstration of prejudice. I would note in particular that there is absolutely no dispute and there has never been a dispute. The defendant was not present personally at the time the jury question was discussed. That's clear. That's what this court found earlier. That's what essentially was stipulated to, although not expressly, at the time of the post-trial hearing. But what is also clear from the record is that it does not appear that the defense attorney who was present ever objected in any way to the judge's response to the jury's question. And that's significant because as a matter of the law regarding the questions of responding to jury questions, if the defense acquiesced to the response, such as to continue your deliberations, then that formally would tell an attorney that there's no reason to raise the issue. And so within the notion of the presumption of proper appellate attorney advocacy, that attorney would have had to look at Childs, the case that counsel relies heavily on, and recognize that if there was an acquiescence by the defense attorney, there'd be no reason to bring that claim. I point that out because that falls within the area of which counsel has not mentioned at all, which is what was the defendant's attorney doing at the time of the jury question? The record indicates that the defendant's attorney was fully in support, or at least we should believe that he was fully in support with the judge's response, because he never objected and no further objection ever came about in the post-trial proceedings. And so it's hard to say that an appellate attorney looking at that, knowing the law, would be unwilling or would be willing to try and raise a claim like that when she believed that she had a stronger argument based upon the refusal to give the reckless homicide instruction, the involuntary manslaughter, excuse me. So from a first stage of Strickland, first prime Strickland, there's no demonstration that can overcome the presumption of competence. As to the prejudice point, the facts are clear. In fact, in this court's previous decision, this court recognized that the defendant concedes to the facts as they exist. And the facts as they exist are the defendant, in response to a minor altercation the day before over an allegedly stolen dog, chooses to get a gun to bring it to the location and then fires repeatedly at the victims. Now, yes, he did testify that he saw someone else firing a gun. But, of course, he didn't say that when he spoke to the police beforehand. Instead, he said he thought he saw somebody with his hand in his pockets. But either way, the law is clear. An initial aggressor cannot raise self-defense. The law is clear that you cannot bring in deadly force in response to a non-deadly force. And the law is clear that in order to claim an even unreasonable belief in self-defense, you have to be able to point to the fact that you thought you were an imminent harm and that it wasn't of your own doing. That doesn't exist here. This defendant was properly convicted of first degree murder. Yes, an error occurred in the fact that the judge did not have the defendant there when they were discussing the jury notes. But it wasn't an error of significant proportions. Had it been raised on direct appeal, it likely would have either been deemed to have been acquiesced to or it would have been found harmless. And so for those reasons, we would ask this court to hold that the trial court below, the circuit below, properly granted the state's motion to dismiss because the defendant has not made a substantial showing of a constitutional violation. Thank you. Are there any questions by any members of the panel? No, thank you. No, no questions. Let's hear the rebuttal. Mr. Honor, may I ask, do I have my full five minutes or did I? You have five minutes. Okay, excellent. Thank you, Your Honor. I would say that there there are matters that that this is a second stage post conviction appeal. And at the second stage, all well pleaded complaints are taken as true. Some of the the what is missing in the record, some of the things that we would like to know what a trial counsel say at the jury note instruction hearing. Why didn't appellate counsel raise this issue? But did she have any information outside the record based on maybe her correspondence with the client that explains why she didn't raise this issue? Perhaps even the the credibility of the defendant's affidavit, which is taken as true as true at this stage, saying that had he been present, he would have asked his attorney to make an objection or try to interpose a personal objection. Those things need to be determined. But those are third stage determinations where we can elicit more facts and credibility determinations. Here at the second stage, I believe that that there's there's been a showing of legal error. All that all well pleaded facts taken as true. As to prejudice, I in addition to what I said, I mean, we've we've threshed that out pretty thoroughly. But I do want to add that the court and the Supreme Court and Childs didn't enter into an extended discussion of the facts of the case. They basically said it's prejudice because the jury the jury was confused on a key instruction. That's enough. Now, I believe in this case, there are facts to demonstrate that demonstrate prejudice, specific facts as to what the defendant may or may not have believed. But a confused jury, confused on a core instruction as to the as to as to the definition of the defendant's best defense, I don't think can render a fair a fair verdict. Your Honor, I guess that is that is my rebuttal. Any questions? Is there any questions by any members of the panel? No, I guess it's Lampkin. I don't I don't think so. I the I would just I would just say this, Mr. Mark feel you didn't. I don't think you answered Justice Gordon's initial question. But even if it is error for the appellate counsel not to raise the issue, where is prejudice if his guilt is overwhelming and the jury would have reached that decision, even if the proper instruction had been given. I'm sorry if I was unclear in my initial answer. I don't think that the evidence was overwhelming. First of all, the jury was confused. And second of all, there is evidence in the record that the defendant held this unreasonable belief. If he held this unreasonable belief. Then, then it's second degree murder. The jury should have. And if, and therefore, direct appeal counsel should have raised the issue. The prejudice. I mean, the jury should have been able to make that determination and been properly informed in making that determination. Did he hold this unreasonable belief. It's a low standard to me. It's what was in his head. People believe on on irrational unreasonable things all the time. And all direct appeal counsel had to do was raise this preserved issue, and the prejudice was the jury confusion and the facts of the case. Any questions. Any further questions. Yeah. All right, well, I want to thank you guys you did a good job. Very good argument. Thank you. And you've given us an interesting case and we'll have an opinion or an order for you very shortly. The court will be adjourned until the next case.